BANK OF PIKE COUNTY, *Appellant,* v. MURRAY *et al.*

| 88 | 191 |
| 97 | 249 |
| 88 | 191 |
| 70a | 580 |

**Practice in Supreme Court.** In an equity case the Supreme Court will defer somewhat to the finding of facts of the trial court.

*Appeal from Hannibal Court of Common Pleas.*—HON. THEODORE BRACE, Judge.

AFFIRMED.

*W. H. Biggs* and *D. H. McIntyre* for appellant.

(1) The evidence clearly establishes the fact that Murray, in conveying his large estate to Luce, acted fraudulently, and with intent to hinder, delay, or defraud his creditors. The decree of the court is against the preponderance of evidence on this issue. In chancery cases this court will review the testimony upon which the decree is based and reverse or modify the judgment, if it is manifest that the judgment should have been otherwise. *Judy v. Farmers & Traders Bank,* 81 Mo. 404. (2) Law and justice recognize the equitable and equal interest of all ordinary creditors in the property of the debtor. When one creditor takes the property of an insolvent debtor in payment of his debts, it must appear that the fair market price of the property was allowed, and it must also appear that the grantee acted *bona fide,* that is, without notice of the fraudulent intention [if any] of the grantor to hinder or delay his other creditors. But actual knowledge by the grantee is not necessary. Facts and circumstances sufficient to put a prudent man on inquiry are sufficient. Bump on Fraud. Con. (2 Ed.) 200, and cases cited. It is not necessary that the design of the grantee be to defraud the creditors of the grantor. If he has notice at the time of the transfer of the fraudulent intentions of

the grantor, this makes him a *mala fide* purchaser. *Edgell v. Lowell*, 4 Vt. 405; *Fuller v. Sears*, ·5 Vt. 527. Luce was Murray's father-in-law, their business relations were of the most intimate character, and under such circumstances it should require but little testimony to prove that Murray's intentions were known to Luce. *Carter v. Illies*, 22 Tex. 479. Murray was Luce's agent, and transacted all his business. If Murray's intentions in conveying his property to Luce were fraudulent, then Luce cannot shield or protect himself against the demands of Murray's creditors upon the grounds that he was not aware of his intentions. If Murray acted for both, then his fraudulent purposes or intentions vitiated or tainted the transactions between the two. Bump on Fraud. Con. (2 Ed.) 203.; *White v. Graves*, 7 J. J. Marsh. 523; *Wiley v. Knight*, 27 Ala. 336; *Pope v. Pope*, 40 Miss. 516; *Bobb v. Woodward*, 50 Mo. 95; *Clark v. Fuller*, 39 Conn. 238. (3) The decree finds an absolute assignment of the VanHorn notes to Luce. This finding is clearly against the evidence. Murray said the notes were assigned as collateral to secure Luce in what he owed him. If the notes were held by Luce as collateral, then his purchase of block thirteen in October, 1878, enured to Murray's use, because at the time of the sale Murray owed Luce nothing, Luce held the property as trustee for Murray, and the appellant, ·as a judgment creditor of Murray, had a right to have the property in the hands of ·Luce subjected to the payment of its judgment. (4) Appellant's objection to the reading of the depositions of James Alexander, B. F. Miller and John T. Rule, should have been sustained; the question was the value of the mill at the time of the transfer, to-wit: in November, 1876, and not as to its value in 1881. (5) What Murray testified to in his deposition in 1874, in reference to the judgment of P. F. Lonergan against Wm. M. VanHorn and himself, was competent. It was VanHorn's debt and

Murray was security. If the judgment could have been collected by Luce from VanHorn's estate, then there was no necessity for, or good reason why Murray should convey to Luce his individual ·property in payment of the judgment. The testimony has a tendency to throw some light on the character of the transactions between Murray and Luce—that is, whether *bona fide* or otherwise.

*Smith & Krauthoff* and *W. P. Harrison* for respondents.

(1) The amended petition should have been stricken out, as it was an entire change of the original cause of action. *Lumpkin v. Collier*, 69 Mo. 170 ; *Fields·v. Maloney*, 78 Mo. 172 ; *Parker v. Rodes*, 79 Mo. 88. All facts stated in an amended pleading must exist at the bringing of the suit. 4 Wait's Prac., 467 ; *McCaslan v. Latimer*, 17 S. C. 123; *Hornfager v. Hornfager*, 6 How. Pr. 13; *Drought v. Curtiss*, 8 How. Pr. 56 ; *Stafford v. Howlett*, 1 Paige, 200 ; 3 Roberts, 621 ; 15 Cal. 308. (2) A debtor has the right to prefer one creditor over another. *Sibly v. Hood*, 3 Mo. 290 ; *Chouteau v. Sherman*, 11 Mo. 385 ; *Murray v. Cason*, 15 Mo. 378 ; *Kuykendall v. McDonald*, 15 Mo. 416 ; *Dougherty v. Cooper*, 77 Mo. 528 ; Bump on Fraud. Convey. (3 Ed.) 183–4, *et seq.* (3) That Luce was Murray's father-in-law does not affect the question if the indebtedness to the former was *bona fide*. (4) The fact that Murray expected Luce, and the latter had expressed a purpose to settle the property paid on the former's wife, or that the preference would enure to the benefit of his wife, or of his family, does not make the transfer fraudulent. *Young v. Stallings*, 5 B. Mon. 309 ; *Crueton v. Doby*, 10 Rich. Eq. 414 ; Bump on Fraud. Convey. (3 Ed.) 190. (5) The creditors of Murray have no right to complain of what Luce did with the property conveyed to him.

It was his own and he had the right to make any dispo-sition of it he pleased. Young v. Dumas, 39 Ala. 60; Winch v. James, 68 Pa. St. 297; Bump on Fraud. Convey. 193. (6) Nor is it material to inquire what Murray's secret motives were in preferring Luce. Crawford v. Austin, 34 Md. 49; Young v. Dumas, 39 Ala. 60; Winch v. James, 68 Pa. St. 297. (7) Although this is an equity case, yet unless the findings of the trial court are clearly wrong, they will not be disturbed. Chapman v. McElrath, 77 Mo. 38; Hendricks v. Wood, 79 Mo. 590; Judy v. Bank, 81 Mo. 404; Bushong v. Taylor, 82 Mo. 660.

HENRY, C. J.—By this action, plaintiff seeks to subject to the payment of a judgment in its favor against Murray, a parcel of ground in the city of Louisiana, the legal title to which is held by Luce, who purchased it at a sale by a trustee to whom it had been conveyed by one Van Horn to secure a debt of eighteen thousand dollars, owing by him to Murray, evidenced by promissory notes, which it is alleged were by Murray assigned to Luce in fraud of his creditors. On a hearing of the cause the bill was dismissed, and plaintiff has prosecuted this appeal. The judgment in favor of plaintiff against Murray was rendered in December, 1876, for $4,744.95, and was the balance of an indebtedness of about fifteen thousand dollars of the firm of Whitney, Lonergan & Co., of which Murray was a member. The assignment of the Van Horn notes by Murray to Luce was made ten days before that judgment was rendered, and the sale of the block was made under the deed of trust in October, 1878, and purchased by Murray for Luce, his father-in-law. The evidence in the cause shows that Murray was largely indebted to Luce at the time of this assignment, and was, in effect, insolvent, owing to others considerable amounts.

The assignment of the notes against Van Horn was

. made in November, 1876. Murray had previously conveyed to Luce a store house, and one-half of mill property in Louisiana, for the consideration of five thousand dollars, and on the tenth of December, 1876, six hundred acres of land in Harrison county for thirteen hundred and fifty dollars, and three hundred and eighty acres in Vernon county for one thousand dollars. January 5, 1875, Murray sold some property in Chicago to Luce for eight thousand dollars, and an interest in property in Quincy at four thousand dollars, and other property which, estimated at prices placed upon it by plaintiff's attorney in his argument, aggregated $36,-111.00, which was about ten thousand dollars in excess of Murray's indebtedness to Luce, as testified to by Luce and Murray, and not contradicted, but corroborated to a considerable extent by the records of judgment in Luce's favor against Murray, and judgments against Murray in favor of other parties, assigned to Luce. The contention of appellant is, that the property conveyed by Murray to Luce was worth more than Luce paid for it, and for the purpose of showing that portions of it were sold to Luce at greatly less than their value, read from the testimony of Murray, in a cause theretofore pending in the Macon circuit court between Van Horn and Murray, involving the question of Murray's solvency, in which Murray placed the value of the land in Harrison county at three thousand dollars, and that in Vernon county at about three thousand and five hundred dollars, which he sold to Luce, the one tract for thirteen hundred and fifty dollars, and the other for one thousand dollars. The deposition was taken about two years before this cause was tried. No other testimony was offered by plaintiff to show that the land was worth more than the price paid by Luce, or to contradict the testimony of Murray that he had had the lands in the market for some time, and that he could get no more for them than Luce paid him. As to the other property,

witnesses differed as to its value, some placing each parcel at one-half the value testified to by others.

A creditor receiving from his debtor property in payment of his debt, will avail himself of the opportunity growing out of the necessities of the debtor to get it at the lowest possible price. ' There is no such fixed value upon the character of property taken by Luce, as to enable a court or jury to determine, with anything like mathematical exactness, what the creditor has received in value, and while what the debtor may have said or sworn it was worth two years before may tend to prove a fraudulent intent on his part in making the conveyance, it is by no means conclusive on the purchaser as to its value at the date of the conveyance. And in considering the testimony of Murray, given in the case between him and Van Horn, the fact is not to be overlooked that he was deeply concerned to establish his solvency, nor is it to be forgotten that men nearly always overvalue their own possessions. In taking property in different parcels, in different localities and states, in payment of a *bona fide* debt due him, not one of a hundred creditors would accept it at anything near its actual cash value, and if such sales are to be set aside as fraudulent because a full cash value was not allowed the debtor for his property, but few of such transactions would be unimpeachable. I do not propose, in this opinion, to notice all the points made by the appellant's attorney, in his exceedingly able oral argument before us; but they have been duly considered, and a careful examination of the testimony forbids our interference with the judgment of the circuit court. The judge who tried the cause was more favorably situated than we, to determine the merits of this controversy on the testimony, and while we might think that the testimony would have warranted a different judgment, some deference is due to the opinion of the trial judge before whom most of the witnesses personally appeared and testified,

and to whom they were probably personally known.    In all such cases we decline to interfere with the judgment unless it is manifest that it should have been for the other party.    The judgment is affirmed.